IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

RONDA J. RUSSELL                                                                                    PLAINTIFF

           v.                              Civil No. 11-2248

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                                                  DEFENDANT

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

      Plaintiff, Ronda Russell, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.**    **Procedural Background:**

      The plaintiff filed her application for DIB on March 25, 2010, alleging an onset date of April 30, 2007, due to a respiratory impairment, angina, gastrointestinal disorder, pain disorder, anxiety disorder, mood disorder, and personality disorder. Tr. 17, 124-125, 158-159, 163, 166, 167-168. The Commissioner denied Plaintiff's application initially and on reconsideration. Tr. 71-85. An administrative hearing was held on March 25, 2010. Tr. 43-77. Plaintiff was present and represented by counsel.

      At the time of the hearing, Plaintiff was 43 years old and possessed the equivalent of a high school education and two years of college credit. Tr. 36-37, 124, 159. She had past relevant work "(PRW") experience as a domestic housecleaner and commercial cleaner. Tr. 57, 160, 181-189, 194, 202.

      On November 17, 2010, the ALJ found Plaintiff's gastrointestinal disorder, pain disorder, anxiety disorder, mood disorder, and personality disorder to be severe, but concluded they did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4 prior to

December 31, 2009, her date last insured. Tr. 19-21. After partially discrediting plaintiff's subjective complaints, the ALJ determined that plaintiff retained the residual functional capacity ("RFC") to

> lift and carry 20 pounds occasionally and 10 pounds frequently. The claimant can sit for about six hours ruing an eight-hour workday and can stand and walk for about six hours during an eight-hour workday. The claimant can understand, remember, and carry out simple, routine, and repetitive tasks. The claimant can respond appropriately to supervisors, co-workers and usual work situations, but have occasional contact with the general public.

Tr. 21. With the assistance of a vocational expert, the ALJ found plaintiff could perform her PRW as a commercial cleaner. Tr. 91.

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on February 18, 2011. Tr. 1-5. Subsequently, plaintiff filed this action. ECF No. 1. This case is before the undersigned for report and recommendation. Both parties have filed appeal briefs, and the case is now ready for decision. ECF Nos. 12, 13.

The Court has reviewed the entire record in this case, including the transcript of the administrative hearing, Plaintiff's medical records, the ALJ's opinion, and the appeal briefs filed by the parties. The complete set of facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

**II.   Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v.*

*Massanari*, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity.  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § § 423(d)(3), 1382(3)(c).  A plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits:  (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience.  *See* 20 C.F.R. § § 404.1520(a)- (f)(2003).  Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity.  *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

**III.   Discussion:**

Of particular concern to the undersigned is the ALJ's RFC assessment. RFC is the most a person can do despite that person's limitations.  20 C.F.R. § 404.1545(a)(1).  A disability claimant has the

3

burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009)*; see also Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (ALJ is responsible for determining RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own description of his limitations). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003); *see also Jones*, 619 F.3d at 971 (RFC finding must be supported by some medical evidence).

In formulating Plaintiff's RFC, Plaintiff contends that the ALJ improperly dismissed the opinions of Drs. Hoang , Sutterfield, Kralik, and Spray, and after reviewing the entire record, we agree. On April 13, 2010, Plaintiff presented to Dr. Sutterfield's office with complaints of diarrhea up to seven times a day and body aches. Tr. 290-291. On examination, Plaintiff exhibited diffuse tenderness. Tr. 290. Dr. Sutterfield diagnosed her with reflux, diarrhea, intermittent rectal bleeding, and depression, and she prescribed Cymbalta instead of Prozac as well as Phenergan. She recommended that Plaintiff undergo a colonoscopy, but Plaintiff indicated that she did not have insurance and could not afford to pay for this procedure. Tr. 293.

In June 2010, following an essentially unremarkable physical exam, Dr. Hoang diagnosed Plaintiff with chronic, daily diarrhea that required further evaluation, suicidal ideations, depression panic

4

attacks, chronic abdominal pain, and behavioral disorder. He then assessed her with severe physical limitations for work. He did not, however, provide an explanation of her limitations. Tr. 245-249.

On June 18, 2010, Dr. Kralik performed a consultative psychological evaluation of Plaintiff. Tr. 235-241. Plaintiff reported a number of issues, including depression, crying, nervousness, fatigue, suicidal thoughts, discomfort around other people, inability to concentrate, rage, screaming, and anger. She reported having difficulty maintaining jobs due to anger management issues and experiencing extreme highs and lows. Tr. 235. Dr. Kralik felt that it was likely that Plaintiff exhibited irritability in circumstances where she perceived others were trying to control her or when she was expected to do something that others did not want to do. Tr. 237. She also noted that ruminative depressive tendencies, impulsiveness, and inattentiveness negatively affected Plaintiff's processing speed and efficiency. Tr. 238. Dr. Kralik diagnosed her with impulse control disorder, not otherwise specified; combined intermittent explosive disorder; attention deficit hyperactivity disorder exacerbated by the sequelae of multiple head injuries; anxiety disorder, not otherwise specified, with mild to moderate panic, mild agoraphobia, and sequelae from life-long domestic violence; mood disorder, not otherwise specified; and personality disorder, not otherwise specified, with prominent borderline and narcissistic features and secondary avoidant features. She assessed Plaintiff with a global assessment of functioning ("GAF") score was 35 to 45 with a typical score over the last year of 40 to 50. Tr. 239. Dr. Kralik indicated that Plaintiff's capacity to carry out activities of daily living was moderately impaired; her capacity to communicate and interact in a socially adequate manner was moderately to significantly impaired; her capacity to communicate in an intelligible and effective manner was adequate; her capacity to cope with the typical mental/cognitive demands of work tasks was significantly impaired; her ability to attend and sustain concentration was adequate for the most part with mild to moderate transient symptoms; her capacity to sustain persistence was moderately to significantly impaired; and her capacity to complete tasks within an acceptable time frame was mildly impaired. Tr. 240. Dr. Kralik felt that Plaintiff's

AO72A
(Rev. 8/82)

dramatic personality features along with her stress level and hopelessness would heighten her affective and behavioral reactivity.  Tr. 241

On October 6, 2010, Plaintiff returned to Dr. Sutterfield's office with complaints of nausea, abdominal pain, a lot of loose stools, constipation, depression, chest tightness, and difficulty focusing. Tr. 283-284.  An examination revealed diffuse tenderness to abdomen, but no rebound or guarding and normal bowel sounds.  Dr. Sutterfield noted that Plaintiff should be assessed by a gastrointerologist as soon as possible.  Although no explanation was provided, Dr. Sutterfield stated that she did feel patient could return to work at this time.  Tr. 283-284.

Then, on October 20, 2010, Dr. Sutterfield, Plaintiff's treating doctor, completed an assessment of Plaintiff's work-related limitations (i.e., residual functional capacity). Tr. 285-287.  She felt Plaintiff could sit for 30 to 45 minutes at a time and up to four or five hours a day; stand for 15 to 20 minutes at a time and up to one hour per day; and walk for five to ten minutes at a time and up to 45 minutes per day. She also felt Plaintiff could lift and carry up to 10 pounds occasionally; occasionally push/pull, reach, bend, stoop, crouch, kneel, and climb stairs and ramps; rarely work in an extended position, work above shoulder level, balance, and twist; and, never work overhead, squat, crawl, and climb ladder or scaffolds.  Tr. 285.  Dr. Sutterfield also concluded Plaintiff should avoid working near unprotected heights and dangerous machinery, exposure to extremes and sudden or frequent changes in temperature and/or humidity, and exposure to respiratory irritants; and, should avoid moderate to marked exposure to handling vibrating tools and driving/riding in automotive equipment.  She indicated that the objective basis for her opinion was Plaintiff's chronic myofascial pain, fatigue, exertional dyspnea, chronic abdominal pain, and daily explosive diarrhea with rectal bleeding (possible Crohn's disease) and very apparent psychological limitations. Dr. Sutterfield went further to state that her assessment was also based on her "long-term" treatment of Plaintiff and a review of her medical records.  She opined that it was her medical opinion that Plaintiff was essentially limited to basic acts of daily living and could

certainly not engage in even the most sedentary of work activity on a sustained basis, day in and day out. Dr. Sutterfield also opined that Plaintiff's condition would likely progressively worsen in the forseeable future. Tr. 285-287.

Dr. Spray performed a psychological evaluation of Plaintiff on January 11, 2011. Tr. 297-304. Plaintiff was tearful during the exam with mildly pressed speech. She reported mood swings and becoming upset when she was around a lot of people. Dr. Spray diagnosed Plaintiff with bipolar II disorder, depressed phase, without psychosis; personality disorder with borderline, narcissistic, and avoidant features; and a provisional diagnosis of borderline intellectual functioning. Tr. 300. He rated Plaintiff's functioning and indicated that she was extremely limited in her ability to relate to coworkers, interact with supervisors, work in coordination with or proximity to others without being distracted by them, complete a normal workday, complete a normal workweek, demonstrate reliability, behave in an emotionally stable manner, and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. Dr. Spray also rated a number of functions as severely limited, including the ability to deal with work stresses; understand, remember, or carry out detailed or complex instructions; maintain regular attendance; deal with the general public; and, accept instructions and respond appropriately to criticism from supervisors. Tr. 301-303.

While we do note that the medical evidence of record is scant, we are bothered by the fact that all of the doctors who treated Plaintiff, even those evaluating her on only one occasion, concluded that she would have severe physical and/or mental limitations related to her pain, fatigue, diarrhea, and mental impairments. The ALJ dismissed these assessments, stating that they were not supported by the medical evidence of record and that the doctors must have used Plaintiff's subjective complaints as the basis for their assessments. We find it doubtful, however, that four different doctors would rely solely on her subjective complaints and assess Plaintiff with significant restrictions. It appears there is more to this case than meets the eye. Accordingly, we believe that remand is necessary to allow the ALJ to

develop the record further with regard to Plaintiff's physical and mental limitations. *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004) ("Well-settled precedent confirms that the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case.")..

On remand, the ALJ should order a gastrointestinal consultative examination. *See Barrett v. Shalala*, 38 F.3d 1019, 1023 (8th Cir. 1994) (if the medical records presented to ALJ do not give sufficient medical evidence to determine whether the claimant is disabled, ALJ is required to order medical exam and tests). It would also be advisable to recontact each of the aforementioned physicians, asking them to provide additional information regarding the objective and subjective bases of their assessments. *See Johnson v. Astrue*, 627 F.3d 316, 320 (8th Cir. 2010) (ALJ should recontact a treating or consulting physician if a critical issue is undeveloped or underdeveloped).

## IV.     Conclusion:

Based on the foregoing, we recommend reversing the decision of the ALJ and remanding this case to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g). **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 25th day of September 2012.

                                                        /s/ *J. Marschewski*
                                                       HON. JAMES R. MARSCHEWSKI
                                                       CHIEF UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)